UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**BILL ROTAX**

              Plaintiff,

       v.                                                  5:02-CV-1112 (HGM/DEP)

**LEPONTO'S HAIR STYLING AND BEAUTY,
CULTURE SCHOOL, INC. d/b/a PHILLIPS
HAIRSTYLING INSTITUTE, GAIL LIBERATORE,
STEVEN C. PHILLIPS, INC., STEVEN C. PHILLIPS,
individually and as owner and operator of both
corporations,**

              Defendants.
_____

**APPEARANCES:**                                **OF COUNSEL:**

MARION CHASE PACHECO, ESQ.
Attorney for Plaintiff
248 Centre Avenue
Apartment 1A
New Rochelle, New York 10805

GEORGE F. HILDEBRANDT, ESQ.
Attorney for Defendants
300 Crown Building
304 South Franklin Street
Syracuse, New York 13202

BROWN & HUTCHINSON                      T. ANDREW BROWN, ESQ.
Attorneys for Defendants
925 Crossroads Building
Two State Street
Rochester, New York 14614

**HOWARD G. MUNSON
Senior United States District Judge**

### MEMORANDUM - DECISION AND ORDER

      Plaintiff, Bill Rotax, filed a complaint against defendants Leponto's Hair Styling and Beauty

Culture School, Inc., doing business as Phillips Hairstyling Institute ("PHI"), Gail Liberatore, the

financial aid administrator of PHI ("Liberatore"), Steven C. Phillips, Inc., and Steven C. Phillips

("Phillips") (collectively "defendants"), alleging causes of action for unpaid wages under the Fair

Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216 *et. seq.*, and New York Labor Law, for

violations of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C.

§ 1161 *et. seq.*, and the Employment Retirement Income Security Act ("ERISA"), §§ 404(a)(1) and

502(a)(3)(B), for failing to offer him health insurance after his termination, for fraudulent

misrepresentation under New York Labor Law §§ 190, 198 *et. seq.*, for unlawful employment

practices under New York Executive Law § 296(1)(a), and for breach of employment contract and

defamation under New York Common Law. *See* Dkt. No. 1, Compl.  Currently before the court are

plaintiff's two letter requests and defendants' motion for summary judgment pursuant to Rule 56

of the Federal Rules of Civil Procedure. *See* Dkt No. 18, Notice of Mot.  For the reasons set forth

below plaintiff's letter requests are DENIED, and defendants' motion for summary judgment is

GRANTED in part and DENIED in part.

## BACKGROUND

**I.    Facts**[1]

In the spring of 1991, plaintiff submitted his resume and a letter of interest to PHI.  Dkt. No.

19, Def.'s Statement of Material Facts at ¶ 1.  Thereafter, Phillips, PHI's owner and operator,

interviewed plaintiff.  Id. at ¶ 2.  On May 1, 1991, Phillips sent plaintiff a letter bearing an offer of

employment, which outlined the relevant terms and conditions of the School Coordinator position

offered to plaintiff, including: a $20,800 annual salary; provisions for vacation, sick time, health

insurance and one-half reimbursement of tuition for pre-approved continuing education in which

---

[1]The court cites to both defendants' docketed summary judgment motion filings and plaintiff's unfiled, and, consequently, undocketed summary judgment opposition papers, which consist of the following: a Statement of Material Facts, a Memorandum of Law with attached exhibits, and an Attorney Affirmation with attached exhibits.  Contrary to the Local Rules' mandate, plaintiff failed to electronically file his opposition papers; nevertheless, the court has considered them in its disposition of defendants' summary judgment motion and directs that they be filed at this time.

plaintiff maintained a "B" or better average; and, a particular start date for the position.  Id. at ¶ 3;

Phillips Aff. at ¶ 5, Ex. C.  The offer also stated: "there will be an [sic] $50 incentive based on

students who complete the course."[2]  Dkt. No. 19, Phillip's Aff. at Ex. C.  The offer letter was not

binding on plaintiff.  Dkt. No. 19, Def.'s Mem. of Law at 2; Brown Aff. at Ex. C, Rotax Dep. at 49.[3]

Plaintiff accepted the offer and commenced his employment in June 1991.  Dkt. No. 19, Def.'s

Statement of Material Facts at ¶ 4.  Plaintiff served as PHI's School Coordinator until September

10, 1999, when he was discharged due to an alleged "termination of his position" at PHI.  Dkt. No.

1, Compl. at ¶ 3.

　　　Plaintiff maintains that he was an hourly, rather than salaried, employee.  Pacheco Aff. at ¶

5.  Although at his deposition, plaintiff testified that his job *offer* had "a salary, slash, per weekly

figure" and did not include an "hourly" rate, Dkt. No. 19, Def.'s Mem. of Law at 2; Brown Aff. at

Ex. C, Rotax Dep. at 58, plaintiff disputes that this testimony indicates that he was a salaried

employee and directs the court's attention to his pay stubs as evidence of the nature of his

compensation.  Id.; Pl.'s Mem. of Law at Ex. D.

　　　The School Coordinator's job description states, in pertinent part, "The School Coordinator

---

[2]Defendants contend that prior to plaintiff's acceptance of the School Coordinator position, the parties agreed that if plaintiff ever assumed the responsibilities of Financial Aid Coordinator, he would then be eligible for the $50 incentive for every student who successfully completed the PHI program of courses.  Def.'s Mem. of Law at 3; Phillips Aff. at ¶ 8.  Phillips avers that while the parties discussed enrollment incentives at plaintiff's interview, a subsequent change to "the rules" by the New York State Education Department and the National Accrediting Agency of Cosmetology Arts & Sciences ("NAACAS") prohibited such incentives.  Phillips Aff. at ¶ 8.

[3]The following exchange took place between counsel for defendants and plaintiff at his deposition:

Q:　　　When you received the offer letter, you didn't have to accept it, did you?

A:　　　No.

Q:　　　In other words, you didn't have to accept the employment, did you?

A:　　　Correct.

Brown Aff. at Ex. C, Rotax Dep. at 49.

will assist the Director and Financial Aid Director in any way possible to insure [sic] the best educational environment and successful operation of the school." Dkt. No. 19, Def.'s Statement of Material Facts at ¶ 5.  As part of his duties, the School Coordinator was expected to answer telephone calls, conduct initial interviews of prospective students, process new students' information, and maintain students' attendance and progress reports.  Id.  Plaintiff worked as the School Coordinator for nine years.  During this period, defendants maintain that plaintiff never assumed any of the Financial Aid Director's duties.  Id. at ¶ 6; Brown Aff. at Ex. C, Rotax Dep. at 123.  While Plaintiff concedes that he never assumed the formal title of Financial Aid Director, he contends that he performed many of the Financial Aid Director's duties.  Pl.'s Statement of Material Facts at ¶ 6. Also during this period, plaintiff received two pay raises, and PHI assumed payment for plaintiff's health insurance in its entirety.  Dkt. No. 19, Def.'s Statement of Material Facts at ¶ 7.

During plaintiff's employment, PHI employed, at most, eleven employees.  Dkt. No. 19, Def.'s Statement of Material Facts at ¶ 8; Brown Aff. at Ex C., p. 54.  Plaintiff concedes that PHI did not employ more than eleven employees at any one time; however, he baldly asserts that between all of Phillip's businesses, he employed at least twenty employees.  Pacheco Aff. at ¶ 8, Pl.'s Mem. of Law at 5.  PHI maintains that it neither paid its employees overtime nor offered any retirement benefits to them, Dkt. No. 19, Def.'s Statement of Material Facts at ¶¶ 9-10, a contention disputed by plaintiff.  Pl.'s Statement of Material Facts at ¶ 9.

On June 4, 1997, a PHI student, filed an unsolicited written complaint with Phillips in which he alleged that plaintiff had harassed him.  Specifically, the student alleged that plaintiff called him at home and invited him to attend a barbeque after work/school hours.  The student was wary of plaintiff's invitation because he believed that if he were to decline it, plaintiff could use his position at PHI to negatively influence his grades and standing at PHI.  Moreover, the student conveyed that

plaintiff's behavior toward him made him feel awkward and uncomfortable.  Def.'s Statement of

Material Facts at ¶¶ 11-13.  Phillips investigated the student's complaint and spoke with both the

student and plaintiff.  Following the investigation, Phillips issued a letter to plaintiff in which he

stated that plaintiff's behavior was unacceptable.  Id. at ¶ 14.  Plaintiff disputes defendant's account

of the alleged incident in its entirety and argues that defendants forged the written complaint.  Pl.'s

Statement of Material Facts at ¶ 11-13.

Defendants move for summary judgment arguing that neither the FLSA nor New York Labor

Law required PHI to compensate plaintiff, as an administrative employee earning more than $250

per week, for overtime.  Defendants argue that plaintiff cannot recover for breach of employment

contract because he was an at-will employee.  Furthermore, defendants argue that because PHI

employed less than twenty people, it is exempt from COBRA's and ERISA's requirements.  Finally,

defendants argue that they are entitled to qualified immunity as to plaintiff's defamation claim.

## II.   Plaintiff's Belated Discovery Requests

Before proceeding further, the court addresses plaintiff's belated letter requests.  By letter

request dated June 10, 2004, plaintiff's former counsel[4] sought the court's permission to subpoena

records from the James Howard Wayne Association ("JHWA") in an effort to ascertain the number

of people Phillips employed during those years in which Phillips employed plaintiff.  Plaintiff's

counsel speculated that she "might be able to prove" that Phillips employed at least twenty people.

By letter dated July 14, 2004, plaintiff's counsel supplemented her request arguing that it was

impossible for her to determine the name of the company she sought to subpoena during discovery.

---

[4]By letter dated November 17, 2005, plaintiff's counsel, Marion Chase Pacheco, notified the court that she
would no longer be practicing law and that she could no longer represent plaintiff.  *See* Dkt. No. 24, Pacheco Letter.
Accordingly, the court grants plaintiff thirty calendar days from the date of entry of this Memorandum-Decision and
Order to secure new legal representation in this matter, or to notify the court of his intent to pursue his case *pro se*.  In
any event, should plaintiff choose to appeal any part of the court's decision, he is advised that such appeal must be
effected within thirty days of the entry of this order.  *See* FED. R. APP. P. 4(a)(1).

By letter dated June 17, 2004, defendants opposed plaintiff's request arguing: (1) that all discovery in this matter was closed as of October 31, 2003, *see* Dkt. No. 7, Uniform Pretrial Order; (2) that there is no reason why plaintiff's counsel could not have made such a request in the normal course of discovery prior to the discovery deadline; and (3) that to permit plaintiff to subpoena records more than seven months after the close of discovery would cause them severe prejudice.

The court finds that there is nothing in the record to suggest that plaintiff could not have utilized the conventional channels of the discovery process to ascertain the name of Phillips' accountants. Plaintiff's explanation hardly merits the court reopening, in effect, discovery. Plaintiff's request for the court's permission to subpoena records from JHWA is DENIED.

By letter request dated June 22, 2004, plaintiff's counsel requested that the court accept a verification of the PHI student who filed the written complaint against plaintiff. Plaintiff's counsel argued that she submitted the verification to the student months ago, before the close of discovery, but that her office did not receive the verification until April 12, 2004. Plaintiff's counsel concedes that the discovery deadline had elapsed by the time of her request. By letter dated June 28, 2004, defendants opposed plaintiff's request arguing: (1) that the verification is irrelevant to the court's consideration of whether Phillips defamed or sexually harassed plaintiff, and (2) that plaintiff's attempt to submit the verification is tardy, with both the deadline for discovery, October 31, 2003, and the deadline for filing any papers in opposition to defendants' motion for summary judgment, March 26, 2004, having long since passed. The court declines to accept the verification because of the tardiness of its submission. Plaintiff's request that the court accept the verification is DENIED.

## DISCUSSION

### I.      Summary Judgment Standard

The standard for summary judgment is familiar and well-settled. Rule 56 allows for

summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L. Ed. 2d 265 (1991) (quoting FED. R. CIV. P. 1). A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist. *See* Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *See* Thompson 896 at 720; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L. Ed. 2d 176 (1962) (per curiam). If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The role of the court on a motion for summary judgment is not to try issues of fact but only to determine whether there are issues of fact to be tried. *See*, *e.g.*, Anderson, 477 U.S. at 255, 106 S.Ct. at 2513; Gallo v. Prudential Residential Services, Limited Partnership, 22 F.3d 1219, 1223-24 (2d Cir.1994); Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir.1987). The drawing of inferences and the assessment of the credibility of the witnesses remain within the province of the finders of fact. To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986). A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *See* Anderson, 477 U.S. at

250-251, 106 S.Ct. at 2511.

## II.    Plaintiff's FLSA and New York Labor Law Unpaid Wages Claim

As his first cause of action, plaintiff alleges that he was an employee and PHI an employer within the meaning of the FLSA, 29 U.S.C. § 216, *et. seq*., and New York State Labor Law § 190. Plaintiff argues that PHI failed to pay him overtime wages to which he was entitled for work performed in excess of forty hours per week and failed to pay him promised bonuses.  Plaintiff asserts that by refusing to pay him overtime wages, PHI violated the FLSA with knowing and/or reckless disregard for the FLSA's proscriptions.  Dkt. No. 1, Compl. at ¶¶ 11-20.

As an initial matter, the court notes that its analysis of plaintiff's claims under the FLSA applies with equal force to plaintiff's claims under New York State law.  *See* Bennett v. Progressive Corp., 225 F.Supp.2d 190, 215 (N.D.N.Y. 2002) (quoting Debejian v.Atlantic Testing Laboratories, Ltd., 64 F.Supp.2d 85, 87 n.1 (N.D.N.Y. 1999)); *see also* 12 N.Y.C.R.R. § 142-3.2 ("An employer shall pay an employee for overtime . . . in the manner and methods provided in and subject to the exemptions of . . . 29 U.S.C. § 201, *et seq*.").

Congress has carved out numerous exemptions, covering classes of employees, to an employer's duty to pay overtime compensation.  Bennett, 225 F.Supp.2d at 215 (citing 29 U.S.C. § 213).  These exemptions are "narrowly construed against the employers seeking to assert them and their application [is] limited to those establishments plainly and unmistakably within their terms and spirit."   Bilyou v. Dutchess Beer Distrib., Inc., 300 F.3d 217, 222 (2d Cir. 2002).   The "administrative exemption provides that employers are not obligated to pay overtime to those employees who are "employed in a bona fide executive, administrative, or professional capacity." Bennett, 225 F.Supp.2d at 215 (quoting 29 U.S.C. § 213(a)(1)).  The Department of Labor has issued

regulations and interpretations regarding this exemption.[5]

To determine whether an employee fits into the administrative exemption, the regulations require satisfaction of both a "duties test" and a "salary test." 29 C.F.R. § 541.2(e)(2) (2003). Under the "duties test," commonly referred to as a "short test," an employer must establish that the employee's

> primary duty consists of either the performance of office or non-manual work directly related to the management policies or general business operations of the employer or the employer's customers, or the performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein, where the performance of such primary duty includes work requiring the exercise of discretion and independent judgment.

29 C.F.R. § 541.214(a) (2003); *see also* 29 C.F.R. §§ 541.2(e)(2) (2003), 541.2(a)(1) and (2) (2003). Under the short test, the employee's 'primary duty' will usually be what he or she does that is of principal value to the employer, not the collateral tasks that he or she may also perform, even if they consume more than [fifty percent] of his or her time." Bennett, 225 F.Supp.2d at 216 (citing Cooke v. Gen. Dynamics Corp., 993 F.Supp. 56, 59 (D.Conn. 1997) (citations omitted)). Whether an employee is exempt is determined by the work he actually performs, not by an employer's characterization of the work. Cooke, 993 F.Supp. at 60. Generally, the "exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a) (2003). Thus an employee exercises discretion where he "has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to

---

[5]These regulations are entitled to deference and have even been held to carry the force and effect of law. *See* Skidmore v. Swift & Co., 323 U.S. 134, 139, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Interpretive guidelines, however, which seek to clarify or supplement regulations, do not carry the force of law, though they should be viewed as persuasive authority since they "constitute a body of experience and informed judgment to which the courts and litigants may properly resort for guidance." Reich v. Southern New England Telecomm., 121 F.3d 58, 65 (2d Cir. 1997).

matters of significance."  Id.

Here, plaintiff's duties included answering telephone calls, conducting initial interviews of prospective students, processing new students' information, and maintaining students' attendance and progress reports.  Such duties easily qualify as office or non-manual work directly related to defendants' general business operations and the administration of defendants' school.  Plaintiff's duties also required him to exercise discretion and independent judgment.  For example, the admission of students surely constitutes a "matter of significance" in the operation of school.  When conducting initial interviews of prospective students, plaintiff surely exercised independent judgment in assessing their credentials and potential at PHI.  The performance of such duties and the exercise of such discretion satisfy the short test.

As noted above, to be exempt from the FLSA's overtime pay requirements, not only must employees perform appropriate duties, but they also must be paid "on a salary basis."  "According to the salary test, an employee is salaried if regularly paid 'a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.'"  Wolfslayer v. Ikon Office Solutions, Inc., 2004 WL 2536833, at *5 (E.D.Pa. November 8, 2004) (quoting 29 C.F.R. § 541.118(a) (2003)).  "In other words, a salaried employee's pay should not be 'docked,' because 'a salaried employee is paid the same regardless of the number of hours worked.'"  Id. (quoting Klein v. Rush-Presbyterian-St. Luke's Med. Ctr., 990 F.2d 279, 284 (7th Cir.1993)).  If the structure of an employer's compensation scheme does not meet the salary basis test, the FLSA requires that the employee receive overtime pay for those weeks in which he or she worked more than forty hours.

To satisfy the salary test, an academic administrative employee must receive compensation on a salary or fee basis at a rate of not less than $250 per week exclusive of board, lodging or other facilities. 29 C.F.R. § 541.2(e)(2) (2003).  Here, plaintiff's job offer purportedly included an annual

salary of $20,800 or $400 a week.  Plaintiff's pay stubs, however, suggest that he was an hourly

employee.  Of the over 400 weekly pay stubs plaintiff received during the course of his better than

eight year career with PHI, plaintiff has included eighty-six weekly pay stubs for the court's review,

all of which tally the hours he worked on a weekly basis and state an hourly rate-of-pay.  *See*  Pl.'s

Mem. of Law at Ex. D; Pacheco's Aff. at Ex. A.  While the majority of the pay stubs indicate that

plaintiff was compensated in accordance with a standard work-week, *i.e.*, forty hours at a given

hourly rate-of-pay, twenty-three of the pay stubs reveal that when plaintiff worked more than forty

hours a week, his compensation for those weeks rose accordingly, albeit with the additional hours

being compensated at a standard hourly, as opposed to an overtime, rate of pay.  *See* id.  Similarly,

two pay stubs reveal that when plaintiff worked less than forty hours a week, his compensation for

those weeks diminished accordingly.[6]  *See* id.  The twenty-five pay stubs in which plaintiff did not

---

[6]In the following pay periods, plaintiff's compensation varied based upon the quantity of his work:

|  | Pay Period Ending | Hours Worked | Hourly Rate of Pay | Gross Pay |
|---|---|---|---|---|
| 1 | December 20, 1991 | 45 | $10 | $450 |
| 2 | January 10, 1992 | 42.5 | $10 | $425 |
| 3 | January 31, 1992 | 44.25 | $10 | $442.50 |
| 4 | February 14, 1992 | 47 | $10 | $470 |
| 5 | March 6, 1992 | 44.5 | $10 | $445 |
| 6 | March 20, 1992 | 46.5 | $10 | $465 |
| 7 | July 17, 1992 | 35 | $10 | $350 |
| 8 | July 24, 1992 | 45 | $10 | $450 |
| 9 | July 31, 1992 | 35 | $10 | $350 |
| 10 | August 7, 1992 | 45 | $10 | $450 |
| 11 | August 21, 1992 | 44.5 | $10 | $445 |
| 12 | September 11, 1992 | 42 | $10 | $420 |
| 13 | October 9, 1992 | 48 | $10 | $480 |
| 14 | November 6, 1992 | 42.5 | $10 | $425 |

receive a "fixed" weekly salary represent a relatively small percentage of the total number of pay stubs plaintiff received during the course of his employment.  Nonetheless, inasmuch as plaintiff's pay stubs reveal that plaintiff's weekly pay was subject to increases and reductions based upon the number of hours plaintiff worked in any given week, the court finds that he was not a salaried employee.  Moreover, two pay stubs indicate that plaintiff was paid overtime.  *See* Id. (pay stubs from July 14, 1993, December 9, 1994).  Defendants argue, without more, that the two overtime payments were made for plaintiff's performance of teaching duties, which fell outside the scope of plaintiff's duties as the School Coordinator.  *See* Dkt. No. 21, Brown Rep. Aff. at ¶¶ 9-10.  The court is not persuaded by defendants' unsubstantiated argument.  Defendants have failed to satisfy the salary test.

Plaintiff also contends that defendants owe him a $50 bonus "for each and every student who graduated from [PHI] during his tenure . . . ."  Pl.'s Mem. of Law at 5.  Defendants argue that the "incentives" were tied to the Financial Aid Coordinator position, whose duties plaintiff never assumed.  While the court agrees that there is no legal authority cited for the proposition that the

| 15 | December 4, 1992 | 41 | $10 | $410 |
| 16 | December 11, 1992 | 41 | $10 | $410 |
| 17 | January 8, 1993 | 42 | $10 | $420 |
| 18 | May 7, 1993 | 41 | $10 | $410 |
| 19 | May 14, 1993 | 44.5 | $10 | $445 |
| 20 | November 5, 1993 | 43 | $10 | $430 |
| 21 | September 1, 1995 | 43 | $10 | $430 |
| 22 | April 19, 1997 | 45 | $11 | $495 |
| 23 | May 2, 1997 | 43 | $11 | $473 |
| 24 | May 30, 1997 | 43 | $11 | $473 |
| 25 | September 17, 1999 | 80 | $12 | $960 |

payment of incentives, standing alone, confers hourly employee status, the issue of whether defendants owe plaintiff the bonuses or incentives is a question of fact not appropriately decided at summary judgment.  Defendants motion for summary judgment as to plaintiff's FLSA and New York Labor Law claims is DENIED.

## III.   Plaintiff's COBRA Claim

As his second cause of action, plaintiff alleges that defendants violated COBRA by terminating his healthcare benefits and by failing to provide him with an opportunity to elect to continue his healthcare coverage at the time of his termination.  Plaintiff claims that as a result of such violations he is entitled to statutory penalties for the period of September 24, 1999, through April 30, 2002.  Dkt. No. 1, Compl. at ¶¶ 32-34.

COBRA requires "an employer [footnote omitted] who sponsors a group health plan to give the plan's 'qualified beneficiaries' the opportunity to elect 'continuation coverage' under the plan when the beneficiaries might otherwise lose coverage upon the occurrence of certain 'qualifying events,' including the death of the covered employee, the termination of the covered employee's employment (except in cases of gross misconduct), and divorce or legal separation from the covered employee." Geissal v. Moore Medical Corp., 524 U.S. 74, 80, 118 S.Ct. 1869, 1873, 141 L.Ed.2d 64 (1998) (citing 29 U.S.C. § 1163); *see also* Hubicki v. Amtrak Nat'l Passenger R.R. Co., 808 F.Supp. 192, 196 (E.D.N.Y. 1992) (explaining that Congress enacted COBRA "to provide employees who had been covered by an employment-related group health care plan with the opportunity to elect group rate continuation of coverage under the plan in the face of some 'qualifying event'–job loss or hour reduction").  COBRA requires that the "plan sponsor of each group health plan shall provide . . . that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a).  COBRA carves out an

exception, however, for "any group health plan for any calendar year if all employers maintaining

such plan normally employed fewer than [twenty] employees on a typical business day during the

preceding calendar year."  29 U.S.C. § 1161(b); Geissal, 524 U.S. at 80, 118 S.Ct. at 1873, n.5.

Although plaintiff concedes that there were no more than eleven employees working for PHI

at any given time, Dkt. No. 19, Brown Aff. at Ex. C, Rotax Dep. at 54, he asserts that the number

of people Phillips employed exceeded twenty when the employees from his other businesses are

added together.  See Pacheco Aff. at ¶ 8.  As the Fifth Circuit has explained,

> although Congress in 29 U.S.C. § 1161(b) deleted the reference to the
> common-control provisions from 26 U.S.C. § 52, it retained COBRA's general
> definition of the term "employer" from 29 U.S.C.A. § 1167(4).  In defining
> "employer," Section 1167(4) makes applicable the common-control provision of 26
> U.S.C.A. § 414(t).  Section 414(t) refers to section 414(b), which provides that "all
> employees of all corporations which are members of a controlled group of
> corporations (within the meaning of section 1563(a), . . .) shall be treated as
> employed by a single employer."  Section 1563(a)(2) sets out the following
> definition of a "controlled group of corporations" . . . :  Brother-sister controlled
> group.–Two or more corporations if 5 or fewer persons who are individuals, estates,
> or trusts own (within the meaning of subsection (d)(2)) stock possessing–(A) at least
> 80 percent of the total combined voting power of all classes of stock entitled to vote
> or at least 80 percent of the total value of shares of all classes of the stock of each
> corporation, and (B) more than 50 percent of the total combined voting power of all
> classes of stock entitled to vote or more than 50 percent of the total value of shares
> of all classes of stock of each corporation, taking into account the stock ownership
> of each such person only to the extent such stock ownership is identical with respect
> to each such corporation.  26 U.S.C.A. § 1563(a)(2).

Kidder v. H & B Marine Inc., 932 F.2d 347, 354-55 (5th Cir. 1991) (finding that where two

corporations were owned entirely by the same four individuals, those corporations must be treated

as one for the purposes of COBRA).

While plaintiff's legal theory is sound, his argument fails.  There is nothing on the record

beyond plaintiff's conjecture to sustain his claim.  See Bickerstaff v. Vassar College, 196 F.3d 435,

452 (2d Cir. 1999) (explaining that "to satisfy Rule 56(e), affidavits must be based upon 'concrete

particulars,' not conclusory allegations).  There is no evidence that Phillips, or any of the defendants,

own additional businesses, and even assuming *arguendo* that Phillips owned additional businesses, there is no evidence that they were under common control.  On the record before it, the court can only conclude that defendants qualify for § 1161(b)'s small employer exception for those employers who employ fewer than twenty people.  Defendants' motion for summary judgment as to plaintiff's COBRA claim is GRANTED.

**IV.      Plaintiff's ERISA Claim**

As his third cause of action, plaintiff asserts that defendants, as the plan administrators, "owed him a fiduciary duty not to misinform him through material misrepresentations and incomplete, inconsistent or contradictory disclosures."  Dkt. No. 1, Compl. at ¶ 27.  Plaintiff alleges that defendants breached their duty when they canceled his insurance at the time of his termination and failed to offer continuing coverage under COBRA.  Id. at ¶¶ 28-29.  Plaintiff characterizes the alleged breach as a violation of ERISA.  Because plaintiff's ERISA claim is premised upon his failed COBRA claim, *supra*, his ERISA claim similarly fails.  Defendant's motion for summary judgment as to plaintiff's ERISA claim is GRANTED.

**V.      Plaintiff's Fraudulent Misrepresentation Claim**

As his sixth cause of action, plaintiff alleges a claim of fraudulent misrepresentation under New York law.  Plaintiff alleges that defendants demanded that he begin work less than a month after receipt of the "letter of contract" dated May 1, 1991.  Plaintiff further alleges that he acted in reasonable reliance upon the wage and bonus conditions stated in the "contract," or offer of employment, when he accepted the offer and quit his then current employment, moved to Syracuse, and commenced employment.  Dkt. No. 1, Compl. at ¶ 38; Pl.'s Mem. of Law at 5-6.  Plaintiff further alleges that defendants denied him promised compensation and benefits and "disrupted the plans [he] made reasonably relying on the contract."  Id. at ¶ 40.  Finally, plaintiff alleges that defendants "intentionally misrepresented" that plaintiff "would receive regular reviews which would

lead to salary increases and that he would receive bonuses." Id. at ¶ 47.  Defendants argue that the May 1, 1991 letter constitutes no more than an offer of employment and that plaintiff was an employee terminable at will.  See Dkt. No. 19, Defs.' Mem. of Law at 10.

Plaintiff's position is apparently that a written employment agreement resulted from his commencing work at PHI in response to a written confirmation of an offer of employment from Phillips.  In his opposition papers, plaintiff argues that it matters not whether the document at issue is an employment contract or an offer of employment because an offer of employment is enforceable regardless of whether or not an employee could be hired and fired at will and cites to Action Fashion Personnel Inc. v. Warner's Intimate Apparel, 154 Misc.2d 170, 584 N.Y.S.2d 268 (N.Y.City Civ.Ct. 1992) in support thereof.  See Pl.'s Mem. of Law at 6.  Plaintiff's reliance on Warner's Intimate Apparel is misplaced.  In Warner's Intimate Apparel, plaintiff, an employment agency, sought damages based on breach of contract against defendant, a prospective employer.  At defendant's request, plaintiff referred a candidate to defendant and defendant subsequently offered the position to the plaintiff-referred candidate.  "Before the candidate actually began to work for defendant, defendant reneged on the employment offer on the ground that the position was being eliminated. Defendant subsequently declined to pay plaintiff agency any fee."  Id. 584 N.Y.S.2d at 269.  The court held that plaintiff was entitled to summary judgment in the amount of the fee to which the parties had agreed because plaintiff had performed all the conditions of its agreement with defendant.  The Warner's Intimate Apparel court, however, did not hold that an offer of employment is enforceable regardless of whether or not an employee could be hired and fired at will.

It appears that plaintiff has attempted to dress up a breach of contract claim in a fraudulent misrepresentation suit of clothes.  The court cannot permit this attempt to circumvent the employee at will doctrine.  See Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994) (explaining that a plaintiff is not allowed to "dress up" a breach-of-contract claim as a fraud claim); cf. Tesoro Petroleum Corp.

v. Holborn Oil Co., 108 A.D.2d 607, 484 N.Y.S.2d 834 (1st Dep't 1985) ("A failure to perform promises is merely a breach of contract to be enforced by an action on the contract."). Offers of employment whether in letter form or otherwise do not constitute employment contracts. Feeney v. Marine Midland Banks Inc., 180 A.D.2d 477, 479, 579 N.Y.S.2d 670, 672 (1st Dep't 1992). "It is settled law in New York that absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party for any reason, or even no reason." Tanzini v. Marine Midland Bank, N.A., 952 F.Supp. 937, 944 (N.D.N.Y. 1997) (citing Mycak v. Honeywell, Inc., 953 F.2d 798, 801 (2d Cir.1992)); see also Lobosco v. N.Y. Tel. Co., 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 751 N.E.2d 462 (2001) (In New York, "where the term of employment is for an indefinite period of time, it is presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason.") (citing Martin v. N.Y. Life Ins. Co., 148 N.Y. 117, 121, 42 N.E. 416 (1895)); Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987) ("It is still settled law in New York that, absent an agreement establishing fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party."); Murphy v. American Home Products Corp., 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).

Here, the court finds that Phillips' letter is not evidence of an employment contract, but simply an offer of employment at the will of the employer. See Sabetay, 69 N.Y.2d at 333, 506 N.E.2d at 923, 514 N.Y.S.2d at 211. It is only where a plaintiff can establish the existence of an express written agreement limiting the employer's right of termination, that the principles governing employment at will are inapplicable. See Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 461, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982); see also Ullmann v. Norma Kamali, Inc., 207 A.D.2d 691, 616 N.Y.S.2d 583 (1st Dept.1994) ("Any vague oral assurances of the nature alleged are insufficient to overcome the presumption that employment is terminable at will in the absence of an express

limitation in an employment contract, or other document, personnel policy or procedural handbook."); Weintraub v. Phillips, Nizer, Benjamin Krim & Ballon, 172 A.D.2d 254, 568 N.Y.S.2d 84 (1992).  The record before the court supports no such exception: the letter of May 1, 1991, does not provide a guaranteed term or limitations on the right to discharge, and its reference to bonuses is not a guarantee of employment for a minimum duration.  *See* Dalton v. Union Bank of Switzerland, 134 A.D.2d 174, 176, 520 N.Y.S.2d 764.  Therefore, to any extent plaintiff has asserted a breach of contract claim, it has failed.

Assuming *arguendo* that plaintiff has adequately stated a claim for fraudulent misrepresentation as opposed to one for breach of contract, his claim, nevertheless, similarly fails. A plaintiff alleging fraudulent misrepresentation must demonstrate that: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  Eternity Global Master Fund Ltd. v. Morgan Guar., Trust Co., 375 F.3d 168, 186-87 (2d Cir. 2004) (internal quotation marks and citation omitted).  Each element of a fraud claim must be proven by clear and convincing evidence.  *See* Hutt v. Lumbermens Mut. Cas. Co., 95 A.D.2d 255, 257, 466 N.Y.S.2d 28, 30 (2d Dep't 1983).  "It is clear that a fraud claim is not established by simple allegations that the defendant failed to meet its contractual obligations." Dornberger v. Metropolitan Life Insurance Co., 961 F.Supp. 506, 540 (S.D.N.Y. 1997) (citing Stewart v. Jackson & Nash, 976 F.2d 86, 89 (2d Cir. 1992)).  The New York Court of Appeals, however, has held that a contracting party can be held liable for fraud when at the time he made a promise, he did not intend to keep it.  Marvin Inc. v. Albstein, 386 F.Supp.2d 247, 254 (S.D.N.Y. 2005) (citing Channel Master Corp. v. Aluminium Ltd. Sales, Inc., 4 N.Y.2d 403, 151 N.E.2d 833, 176 N.Y.S.2d 259 (1958); Deerfield Communications Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 502 N.E.2d 1003, 510 N.Y.S.2d 88 (1986) (stating that a promise made with the preconceived

notion of not performing it constitutes a misrepresentation)).

In the case at bar, even if plaintiff could prove reliance, and damages, he has offered no proof that defendants made a false representation of fact, *see* Laing Logging, Inc. v. Int'l Paper Co., 228 A.D.2d 843, 845, 644 N.Y.S.2d 91, 93 (3d Dep't 1996) ("The mere fact that the expected performance was not realized is insufficient to demonstrate that defendant falsely stated its intentions."), or that they intended to defraud the plaintiff thereby.  *See* Whalen v. County of Fulton, 941 F.Supp. 290, 298 (N.D.N.Y. 1996) (granting summary judgment on plaintiffs' fraudulent misrepresentation claim where plaintiff had failed to demonstrate that defendants had made any statements with the intent to defraud); New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 318, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995) ("General allegations that [the] defendant entered into a contract while lacking the intent to perform it are insufficient" to support a claim for fraudulent misrepresentation or concealment.).  Accordingly, there is no issue of material fact for a jury to decide and defendants' motion for summary judgment as to plaintiff's fraudulent misrepresentation claim is GRANTED.

## VI.    Plaintiff's Defamation Claim

Plaintiff's final cause of action is a claim for defamation under New York law.  Plaintiff contends that Phillips discussed plaintiff's alleged sexual harassment of a PHI student with at least one other PHI student and members of PHI's staff and publicly stated, "Bill sexually harassed a student."  *See* Dkt. No. 1, Compl. at ¶ 52.  Plaintiff further alleges that Phillips told an additional employee that plaintiff had commented that another PHI student was "cute" and that Phillips had told plaintiff "hands off."  Plaintiff maintains that the conversation Phillips is alleged to have "published" never in fact occurred.  Id. at ¶ 54.  Plaintiff generally claims that he has suffered "severe mental anguish and pain, including loss of self-esteem, personal dignity and career fulfillment . . . ."  Id. at ¶ 55.

In New York, to prevail on a claim for defamation, a plaintiff must establish the following elements: "(1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) published [without privilege, *see* Matthews v. Malkus, 377 F.Supp.2d 350, 357 (S.D.N.Y. 2005) (citation omitted)] to a third party by the defendant; and (4) resulting in injury to the plaintiff." Marinaccio v. Boardman, 2005 WL 928631, at *26 (N.D.N.Y. Apr. 19, 2005) (citation omitted).

Defendants do not contest that a statement regarding plaintiff was made, but contest the third element. As described above, as owner and operator of PHI, Phillips investigated the complaint regarding the PHI's student's complaint that plaintiff had made him feel awkward and uncomfortable. Phillips asserts a qualified privilege with respect to any claims of defamation made by plaintiff. *See* Dkt. No. 19, Defs.' Mem. of Law at 12. In Herlihy v. Metropolitan Museum of Art, 160 Misc.2d 279, 608 N.Y.S.2d 770 (1994), the court explained that

> [w]hile statements made in judicial, quasi-judicial, or administrative proceedings are cloaked with an absolute privilege, and cannot be the basis for a subsequent claim of defamation [citation omitted], a different rule ordinarily applies to statements which are no part of a formal proceeding, but are made during the course of internal investigation or pursuant to inquiry–the rule of qualified privilege" (citation omitted).

Herlihy, 608 N.Y.S.2d at 773. The qualified privilege arises "'when a person makes a bona fide communication upon a subject in which [the person] has an interest or a legal, moral or social duty to speak and the communication is made to a person having a corresponding interest or duty.'" Id. (quoting Santavicca v. City of Yonkers, 132 A.D.2d 656, 657, 518 N.Y.S.2d 29 (2d Dep't 1987)); Stockley v. AT & T Information Systems, Inc., 687 F.Supp. 764, 769 (E.D.N.Y. 1988) (explaining "[v]enrable New York law holds that [a] communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contained incriminating matter which, without this privilege, would be slanderous and actionable; and this

though the duty be not a legal one, but only a moral or social duty of imperfect obligation.").  The qualification is that the challenged statement be made in good faith, and not be actuated by actual malice.  *See* Stukuls v. State of New York, 42 N.Y.2d 272, 279, 397 N.Y.S.2d 740, 366 N.E.2d 829 (1977).  By actual malice is meant personal spite or ill will or culpable recklessness or negligence.  *See* Shapiro v. Health Ins. Plan of Greater New York, 7 N.Y.2d 56, 60-61, 194 N.Y.S.2d 509, 163 N.E.2d 333 (1959) (citing Hoeppner v. Dunkirk Print. Co., 254 N.Y. 95, 106, 172 N.E. 139 (1930)).

The court assumes *arguendo* that Phillips discussed plaintiff's alleged harassment of a PHI student with at least one other PHI student and members of PHI's staff and publicly stated, "Bill sexually harassed a student," which might satisfy the first and second elements.  However, because Phillips' discussed the matter and made the alleged comment to other similarly interested parties, *i.e.*, a PHI student and member of PHI's staff, in the regular course of an internal investigation, without any evidence of malice, Phillips is entitled to a qualified privilege and plaintiff's defamation claim must fail.

Even assuming that plaintiff could demonstrate that Phillips remarks were unprivileged or that his remarks, although privileged, were born of a malicious intent, plaintiff's defamation would still fail.  As to damages, in New York, to prevail on a claim for defamation, a plaintiff must prove "special damages," which consist of "the loss of something having economic or pecuniary value which must flow directly from the injury to the reputation by defamation; not from the effects of defamation."  Marinaccio, 2005 WL 928631, at *27 (citing Idema v. Wager, 120 F.Supp.2d 361, 368 (S.D.N.Y. 2000)).  As with the "special damages" element of a prima facie tort claim, "in order to prove special damages for a defamation claim, the submission of estimates or round figures will not suffice," id., but rather, "a plaintiff [must] fully and accurately define his damages 'with sufficient particularity to identify actual losses.'"  Idema, 120 F.Supp.2d at 368.  Because plaintiff has failed to define his damages with sufficient particularity and has failed to provide specific

evidence of his alleged losses relating to Phillips' alleged statements, he cannot establish a claim for defamation, and therefore, defendants' motion for summary judgment as to plaintiff's claim for defamation is GRANTED.

## CONCLUSION

**WHEREFORE,** after careful consideration of the file in this matter including the parties' submissions and the applicable law, the court hereby

**GRANTS** defendants' motion for summary judgment as to plaintiff's COBRA, ERISA, False Representation and Defamation claims and further

**DENIES** defendants' motion for summary judgment as to plaintiff's FLSA and New York State Labor Law claims for unpaid overtime wages and further

**ORDERS** that plaintiff shall have thirty calendar days from the date of entry of this Memorandum-Decision and Order to secure new legal representation in this matter, or to notify the court of his intent to pursue his case *pro se.*

**IT IS SO ORDERED.**

Dated: March 31, 2006
Syracuse, New York

Howard G. Munson
Senior  U.S. District Judge